Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms and adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. Plaintiff alleges he injured his left knee on 6 May 1997. On said date, defendant employed plaintiff as a forklift operator. The parties were bound by and subject to the North Carolina Workers Compensation Act and defendant was a duly-qualified self-insurer.
3. Plaintiff average weekly wage is $732. 00 and his compensation rate is $488. 00.
4. Plaintiff has not worked with defendant since 6 May 1997.
5. A Gaston Memorial Hospital emergency room record marked as stipulated exhibit 1 was received into evidence. [These records were omitted from the transcript and have now been added by the Full Commission as Exhibit pages 28 and 29].
6. A 14 May 1997 medical record from physicians assistant Wayne Blanton was marked as stipulated exhibit 2 and received into evidence.
7. Dr. James Fosters medical records marked as stipulated exhibit 3 were received into evidence.
 8. Dr. Joseph Zuckers medical records marked as stipulated exhibit 4 were received into evidence.
***********
 ADDITIONAL EXHIBITS
1. A statement prepared by plaintiff on 13 May 1997 was marked as defendants exhibit 1 and received into evidence.
2. An employees report of injury form marked as defendants exhibit 2 was received into evidence.
***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 62 year old male who had been employed by defendant for over 18 years. Upon graduating from high school, plaintiff earned a degree in traffic management and accounting at a business college in Marion, North Carolina.
2. On 6 May 1997, plaintiff was employed as a forklift operator with defendant. Plaintiff was performing his regular job duties when he got off of the forklift in order to carry paperwork to an office at the warehouse where he was working. As plaintiff started to get off of the forklift, his left foot got caught on the forklift and he twisted his left knee. Plaintiff started to fall as his left knee gave way. Plaintiff broke his fall by grabbing the roll cage of the forklift. Plaintiff experienced a popping sensation in his left knee as he fell prior to grabbing the roll cage. Plaintiff turned in his paperwork and on his way back to the forklift his left knee started to hurt. Plaintiff went to the emergency room at Gaston Hospital where he obtained an x-ray on his left knee. The 6 May 1997 medical records from Gaston Hospital indicate that plaintiff had some swelling of the left knee.
3. Plaintiff timely notified defendant of his injury and signed a written report of injury on 13 May 1997.
4. Immediately prior to the 6 May 1997 forklift incident, plaintiff did not have swelling in his left knee and did not recall having any pre-existing pain or other problems with his left knee.
5. After the 6 May 1997 forklift incident, plaintiff began to experience continued swelling, pain, locking, catching, "giving way, and decreased range of motion in his left knee. On 14 May 1997, plaintiff began a course of medical treatment at the Nalle Clinic for his left knee which was arranged by defendant. Plaintiff was initially examined by physicians assistant Wayne Blanton who observed swelling in the joint lines of plaintiffs left knee.
6. On 15 May 1997, plaintiff returned to the Nalle Clinic where he was examined by Dr. Foster who restricted plaintiff to working in a sitting position. Defendant did not have any work available to plaintiff within his restrictions. From 15 May 1997 to 3 November 1997, plaintiff underwent a course of conservative treatment that included physical therapy and the use of anti-inflammatories. During this time period, plaintiff remained under the sitting restriction imposed by Dr. Foster.
7. Beginning on 3 November 1997, plaintiff was treated by Dr. Zucker upon a referral by Dr. Foster. On 14 November 1997, Dr. Zucker performed surgery on plaintiffs left knee to treat a tear in the posterior horn of his medial meniscus and potential internal derangement of the left knee. The surgery consisted of left knee arthroscopy and debridement of plaintiffs medial meniscus and chrondoplasty of his patella and medial joint space. The tear to plaintiffs medial meniscus that Dr. Zucker debrided was degenerative in nature. This surgery was reasonably necessary in order to relieve plaintiffs pain in his left knee resulting from the 6 May 1997 forklift incident.
8. Dr. Zucker was of the opinion that plaintiffs pain after the surgery resulted from his arthritic condition, but plaintiffs injury could have caused a minor split, or slivered off a piece of his cartilage within the joint, or aggravated the meniscus in the back of the knee. He further opined that if plaintiff had a very swollen knee shortly after his injury, one could suppose that he sustained an injury to the weight bearing cartilage of the femur or the meniscus in the back of the knee.
9. Plaintiffs pain in his left knee persisted, so on 29 January 1998, Dr. Zucker performed total left knee replacement surgery. Dr. Zucker performed the knee replacement surgery in order to make plaintiffs left knee pain free. The swelling in plaintiffs knee as observed by physicians assistant Wayne Blanton supports a finding and the Full Commission finds that the 6 May 1997 forklift incident caused a minor split in plaintiffs cartilage within his knee joint or aggravated the meniscus in the back of plaintiffs left knee. The total knee replacement surgery was reasonably necessary in order to relieve plaintiffs pain in his left knee resulting from the 6 May 1997 forklift incident.
10. On 28 May 1998, plaintiff was able to return to work. It was medically safe for plaintiff to walk, sit and stand. He could bend his knee as much as tolerated by discomfort up to 120 degrees. It was medically safe for plaintiff to operate a standard transmission automobile. He could not squat, climb ladders, or lift more than 60 or 70 pounds. Plaintiff did not seek to return to work, but instead retired on 25 June 1998. [Dr. Zucker did not set forth plaintiffs permanent restrictions because plaintiff had made it clear that he was going to retire instead of returning to work.]
11. Plaintiff presented no evidence that he was unable to locate work within his restrictions resulting from his left knee injury after he retired from his employment with defendant.
12. As a result of the 6 May 1997 forklift incident whereby plaintiff twisted his left knee after having caught his foot on something on the forklift, plaintiff aggravated a pre-existing arthritic condition and the worn cartilage in his left knee.
13. As a result of the 6 May 1997 forklift incident, plaintiff was unable to earn any wages for the time period beginning 7 May 1997 to 28 May 1998.
14. No evidence was presented that vocational rehabilitation was medically necessary in order to lessen plaintiffs disability.
15. As of 17 December 1998, plaintiff had reached maximum medical improvement with regard to his left knee.
16. As a result of the 6 May 1997 forklift incident, plaintiff sustained a 40% permanent partial disability to his left knee.
17. Based upon the Deputy Commissioners observation of plaintiffs demeanor during his testimony, Donald Lowes demeanor during his testimony, and prior statements made by plaintiff to medical providers and defendant which are not inconsistent, although not as detailed as his hearing testimony, the Deputy Commissioner found plaintiffs testimony as to the circumstances that took place on 6 May 1997 to be credible. Plaintiffs testimony on how his injury occurred is likewise accepted by the Full Commission as credible.
18. The catching of plaintiffs foot on the forklift on 6 May 1997 constitutes an interruption of his regular work routine and the introduction thereby of unusual circumstances likely to result in unexpected consequences. Plaintiffs resulting injury to his left knee was due to an accident arising out of and in the course of his employment with defendant.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 6 May 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant that resulted in an aggravation of a pre-existing arthritic condition and the worn cartilage of the left knee. N.C. Gen. Stat. 97-2(6).
2. Plaintiffs injury by accident on 6 May 1997 which aggravated his pre-existing asymptomatic, non-disabling left knee arthritic condition either caused, in part, and/or accelerated his need for total left knee replacement.
3. Plaintiff is entitled to receive temporary total disability compensation in the amount of $488. 00 per week for the time period beginning 7 May 1997 to 28 May 1998. Plaintiffs failure to return to work after 28 May 1998 was related to his decision to retire and not his injury. N.C. Gen. Stat. 97-29.
4. Plaintiff is entitled to receive permanent partial disability compensation in the amount of $488. 00 per week for 80 weeks for the permanent partial disability to his left knee. N.C. Gen. Stat.97-31.
5. Plaintiff is entitled to have defendant pay for all medical treatment arising from the 6 May 1997 injury by accident to the extent that such treatment tends to effect a cure, provide relief and/or lessen plaintiffs disability. N.C. Gen. Stat. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation in the weekly amount of $488. 00 for the time period beginning 7 May 1997 to 28 May 1998. This amount has accrued and shall be paid in lump sum to plaintiff subject to attorneys fees approved below.
2. Plaintiff is entitled to receive permanent partial disability compensation in the amount of $488. 00 per week for 80 weeks for the permanent partial disability to his left knee beginning 17 December 1998. The portion of this amount that has accrued shall be paid in a lump sum subject to the attorneys fee approved below.
3. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the aggravation of plaintiffs pre-existing arthritic condition and worn cartilage in his left knee resulting from the 6 May 1997 compensable injury by accident.
4. Defendant shall pay an expert witness fee in the amount of $350.00 to Dr. Zucker.
5. A reasonable attorneys fee of 25% of the compensation due plaintiff under paragraphs 1 and 2 of this Award is hereby approved for plaintiffs counsel and shall be paid as follows: 25% of the lump sum due to plaintiff shall be deducted from that sum and paid directly to plaintiffs counsel. Thereafter, every fourth check shall be paid directly to counsel for plaintiff.
6. Defendant shall pay the costs of this action.
This the ___ day of June, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/_______________ DIANNE C. SELLERS COMMISSIONER